# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Michael W. Blodgett,

         Plaintiff,

v.

Jon Hanson, Tony Krall, The Trustees of
Zuhrah Shrine, John and Jane Does 1-10,
and Court 53 Royal Order of Jesters,

         Defendants.

Civil No. 12-0301 (JRT/JJG)

REPORT AND RECOMMENDATION

JEANNE J. GRAHAM, United States Magistrate Judge

      This matter is before the Court on Defendants Jon Hanson, Tony Krall, The Trustees of Zuhrah Shrine, and Court 53 Royal Order of Jesters' Motion to Dismiss (ECF No. 2); Plaintiff Michael W. Blodgett's First Motion to Amend Complaint (ECF No. 15); and Plaintiff Michael W. Blodgett's Second Motion to Amend Complaint (ECF No. 26). The motion to dismiss was referred to this Court in an Order of Reference dated June 21, 2012 (ECF No. 6). Because Plaintiff's motions to amend the complaint implicate dispositive issues, the Court will address them in this Report and Recommendation as well. For the reasons set forth below, the Court recommends that Defendants' motion to dismiss be granted, Plaintiff's motions to amend be denied, and this case be dismissed with prejudice.

## I.      INTRODUCTION

      Plaintiff Michael W. Blodgett is proceeding pro se in this matter. He is suing Defendants Jon Hanson, Tony Krall, the Trustees of Zuhrah Shrine ("Trustees"), John and Jane Does 1-10, and Court 53 Royal Order of Jesters ("Court 53"). The gravamen of Plaintiff's 78-page

complaint is that Defendants and other Jesters are engaged in a nationwide human trafficking scheme in violation of the Rackateer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c) and (d). Plaintiff also alleges claims of interference with prospective contractual relations and tortious interference with contract.

In lieu of filing an answer, Hanson, Krall, the Trustees, and Court 53 moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Those Defendants also moved to stay discovery pending resolution of the motion to dismiss. Plaintiff opposed both motions and sought leave to file an amended complaint adding new factual allegations and an additional defendant, attorney Britton Weimer. The Court heard oral argument on all three motions on August 31, 2012. On September 4, 2012, Plaintiff filed his second motion to amend the complaint to add additional factual allegations.

## II.     ALLEGATIONS IN THE ORIGINAL COMPLAINT

### A.     General Allegations

Hanson and Krall are members of the Zuhrah Shrine and Court 53. (Compl. ¶ 13, 11(a).) Krall is presently serving as the Zuhrah Shrine's 2012 Potentate. (*Id.* ¶ 13.) Hanson and Krall are also partners in the law firm Hanson, Lulic and Krall, LLC. (*Id.* ¶ 3.)

Plaintiff asserts he learned of the Jesters' alleged human trafficking activities through his work as an investigator and paralegal for an attorney named Andrew Ellis ("Ellis") and his wife, Harriet Ellis. (*Id.* ¶¶ 1, 11, 12.) Ellis was a member of the Zuhrah Shrine for many years until he was expelled in 2004. (*Id.* ¶¶ 1, 15.) After his expulsion, Ellis and his wife filed several unsuccessful lawsuits in Hennepin County District Court against Hanson, other Shriners, and various Shriner entities. (*Id.* ¶¶ 12, 15, 29, 37, 39, 106.) The Honorable Marilyn Brown Rosenbaum was assigned to those cases. (*Id.* ¶ 37.) While Plaintiff clarifies that Judge

Rosenbaum is not a defendant in this case, he accuses her of participating to a degree in Defendants' alleged scheme. (*Id.* ¶¶ 42-46, 52-53.)

Plaintiff's lone apparent connection to Defendants is through his work as a paralegal and investigator for Ellis during the pendency of the state court cases. (*See id.* ¶¶ 11, 12.) Plaintiff accuses Defendants of conducting illicit surveillance on him, retaliating against him, and intimidating him while he worked for Ellis. (*Id.* ¶¶ 2, 4.) For example, Plaintiff asserts that Defendants interfered with his meetings with a Civil Society lawyer in 2010 and 2011. (*Id.* ¶ 65.) Plaintiff blames Defendants for a loss of $52,000 in lost paralegal and investigative revenue, claiming that Defendants not only interfered with his ability to work but also frightened Ellis from hiring him for additional work. (*Id.* ¶ 18.) Plaintiff also accuses Defendants of interfering with his career as an author of fiction. (*Id.* ¶ 4.)

The complaint frequently refers to criminal proceedings brought against several Jesters in New York, including retired New York State Supreme Court Justice Ronald H. Tills. (*Id.* ¶¶ 1, 6, 9, 10(f), 11(c), 28, 77, 95.) Judge Tills pleaded guilty to transporting a prostitute across state lines during a Shriner convention. (*Id.* ¶ 6.) Plaintiff alleges that Judge Tills' guilty plea creates a reasonable inference that he attempted to procure prostitutes in Minnesota as well, which in turn, implicates Defendants by association. (*Id.* ¶ 95.)

## B.    Plaintiff's RICO Claim

Plaintiff has listed RICO predicate acts of human trafficking in violation of the Mann Act; intimidation and retaliation of witnesses, victims, and informants; mail fraud; wire fraud; money laundering; obstruction of justice; interference with commerce; and state law violations of theft, obstruction of justice, false tax reporting, and racketeering. (*Id.* ¶¶ 2, 74.) Plaintiff also

implies that the Jesters have unlawfully obtained favorable tax treatment and deducted their expenses for human trafficking as tax exempt. (*Id.* ¶¶ 5, 11(b).)

With respect to the alleged Mann Act violations, Plaintiff claims that Jesters collect and maintain lists of human trafficking victims for use at their conventions. (*Id.* ¶ 77.) He asserts that Mann Act violations occur at least three or four days each month at local, state, and national levels. (*Id.* ¶ 78.) According to Plaintiff, each new Jester must commit a trafficking act in view of other Jesters to discourage him from reporting any misconduct. (*Id.* ¶ 88.) Plaintiff alleges that Defendants had knowledge of, but failed to report, Mann Act violations. (*Id.* ¶ 73.)

As for mail fraud and wire fraud, Plaintiff avers that Defendants mailed ex parte letters to Judge Rosenbaum during the pendency of the state court actions, seeking to be dismissed as defendants. (*Id.* ¶ 96.) Plaintiff characterizes those mailings as fraud on the court. (*Id.*) In addition, Plaintiff claims that each publication of *The Arabian*, a Shriner newsletter, constituted mail fraud because Defendants failed to disclose the Jesters' alleged illicit activities in those newsletters. (*Id.* ¶ 97.) Other incidents of alleged mail fraud include mailing false tax returns, perpetuating the RICO scheme through emails, and mailing membership solicitation materials that did not disclose the relationship between the Shriners and the Jesters. (*Id.* ¶¶ 99, 111.)

Regarding obstruction of justice, Plaintiff alleges that Defendants committed fraud on the court during the state court proceedings by seeking sanctions against Ellis's attorney and communicating ex parte with Judge Rosenbaum. (*Id.* ¶¶ 96, 107.) He further avers that Defendants illegally wiretapped and intimidated Plaintiff in his work as Ellis's paralegal. (*Id.* ¶ 107.) Relatedly, as to allegations of intimidation and retaliation, Plaintiff contends that Defendants employed individuals to intimidate, monitor, and wiretap him. (*Id.* ¶ 73.) Plaintiff

claims he filed two police reports with the St. Paul Police Department documenting threats or intimidation. (*Id.* ¶ 105.)

## II.     DEFENDANTS' MOTION TO DISMISS

Defendants Hanson, Krall, the Trustees, and Court 53 move to dismiss all claims in the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.     Legal Standards

Dismissal under Rule 12(b)(6) is proper when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Allegations that are "merely consistent with" liability are insufficient to create plausibility. *Id.* (quoting *Twombly*, 550 U.S. at 557). In addition, a court is not bound to accept as true conclusory legal allegations. *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007). Pleadings filed by pro se parties must be construed liberally, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), but "still must allege sufficient facts to support the claims advanced," *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

Generally, the Court may not consider matters outside the pleadings on a motion to dismiss. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). There are limited exceptions to this rule for matters of public record, judicial orders, documents necessarily embraced by the pleadings, and exhibits attached to the pleadings. *See id.* A court may also

consider prior court proceedings. *Lingenfelter v. Stoebner*, No. 03-CV-5544 (JMR/FLN), 2005 WL 1225950, at *2 (D. Minn. May 23, 2005) (citing *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 889 (8th Cir. 2002)).

## B.     Plaintiff's RICO Claims

RICO prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c)). The Act "provides a private right of action for any person 'injured in his business or property by reason of a violation of' its substantive prohibitions." *Dahlgren v. First Nat'l Bank of Holdrege*, 533 F.3d 681, 689 (8th Cir. 2008) (quoting 18 U.S.C. § 1964(c)). RICO "does not cover all instances of wrongdoing," however; "it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006) (*quoted in Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011)).

To state a plausible § 1962(c) claim, Plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) (quoting *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). The pattern must consist of at least two predicate acts, which are related, and which "amount to or pose a threat of continued criminal activity." *United HealthCare Corp. v. Am. Trade Ins. Co., Ltd.*, 88 F.3d 563, 571 (8th Cir. 1996) (quoting *H.J. Inc. v. Nw. Bell Tel.*, 492 U.S. 229, 239 (1989)). In addition, a RICO plaintiff pleading a predicate act based on fraud must satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement. *Nitro Distrib.*, 565 F.3d at 428. That is, the plaintiff must "plead the who, what, when, where, and how: the first

paragraph of any newspaper story." *Crest Constr.*, 660 F.3d at 353 (quoting *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (internal quotation marks omitted)).

### 1. Predicate Acts

Plaintiff alleges the following predicate acts: human trafficking in violation of the Mann Act, intimidation and retaliation of witnesses, victims, and informants; mail fraud; wire fraud; money laundering; obstruction of justice; interference with commerce; and state law violations of theft, obstruction of justice, false tax reporting, and racketeering.

#### a. State Law Violations

Beginning with the alleged state law violations, theft, obstruction of justice, false tax reporting, and racketeering are not statutorily recognized predicate offenses. *See* 18 U.S.C. § 1961(1)(A) (listing state law offenses that are predicate acts). Thus, they cannot support a RICO claim. *See Wisdom v. First Midwest Bank*, 167 F.3d 402, 406 (8th Cir. 1999).

#### b. Obstruction of Justice

Obstruction of justice is listed as a potential predicate act in 18 U.S.C. § 1961(1)(B). It is described in 18 U.S.C. § 1503 as the unlawful influence of a federal court officer through corruption, force, or threats. Here, the complaint does not allege that Hanson, Krall, the Trustees, or Court 53 used corruption, force, or threats to unlawfully influence Judge Rosenbaum or any other court officer. Accordingly, Plaintiff has not adequately pled obstruction of justice as a predicate act. *See Love v. United States*, Civ. No. 09-701 (DSD/FLN), 2010 WL 2301319, at *9 (D. Minn. May 19, 2010), *report and recommendation adopted by* 2010 WL 2301307 (D. Minn. June 4, 2010). Moreover, under the terms of the statute, the obstruction of justice must relate to a federal court proceeding or officer, but the events about which Plaintiff complains occurred in state court proceedings.

### c.        Interference with Commerce

Interference with commerce by threats or violence is listed as a potential predicate act in 18 U.S.C. § 1961(1)(B). It requires the interference to be made by robbery, extortion, violence, or threats of violence. 18 U.S.C. § 1951(a). Plaintiff's complaint contains no such allegations against Hanson, Krall, the Trustees, or Court 53.

### d.        Money Laundering

Money laundering is included as a predicate act in 18 U.S.C. § 1961(1)(B). To properly plead money laundering, Plaintiff must allege facts showing that Hanson, Krall, the Trustees, and Court 53 engaged in a financial transaction with the knowledge and intent to promote unlawful activity or conceal the proceeds of unlawful activity. *See* 18 U.S.C. § 1956. There are absolutely no facts alleged against any named defendant establishing a plausible claim of money laundering.

### e.        Intimidation and Retaliation

Plaintiff's allegations of intimidation and retaliation implicate 18 U.S.C. §§ 1512 and 1513. Section 1512 defines obstruction of justice in terms of tampering with a witness, victim, or informant. Plaintiff does not allege that Defendants killed, attempted to kill, used physical force against any witness, victim, or informant. Thus, § 1512(a) is not applicable.

The next subsection provides:

> Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> > (1) influence, delay, or prevent the testimony of any person in an official proceeding;
> >
> > (2) cause or induce any person to—

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(D) be absent from an official proceeding to which such person has been summoned by legal process; or

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation . . .;

shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(b). There are simply no factual allegations indicating that Defendants took any of these actions. While Plaintiff makes a conclusory accusation that Defendants tampered with a witness, there are no facts related to Defendants' personal involvement, the identity of the witness, the circumstances surrounding the contact, or what testimony or evidence was impacted. As for the allegation that Defendants employed other individuals to intimidate, monitor, and wiretap Plaintiff, Plaintiff does not allege he was a victim, witness, or informant. He asserts only that he worked as an investigator for the Ellises in connection with their civil suits.

The next subsection of § 1512 states:

Whoever corruptly—

(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the

> intent to impair the object's integrity or availability for use
> in an official proceeding; or
>
> (2) otherwise obstructs, influences, or impedes any official
> proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years,
> or both.

18 U.S.C. § 1512(c). Plaintiff does not allege facts establishing that any particular Defendant altered, mutilated, or concealed evidence, or that Defendants acted corruptly in obstructing, influencing, or impeding an official proceeding. Again, conclusory allegations do not suffice.

> Subsection (d) provides:
>
> > Whoever intentionally harasses another person and thereby
> > hinders, delays, prevents, or dissuades any person from—
> >
> > (1) attending or testifying in an official proceeding;
> >
> > (2) reporting to a law enforcement officer or judge of the
> > United States the commission or possible commission of a
> > Federal offense or a violation of conditions of
> > probation . . .;
> >
> > (3) arresting or seeking the arrest of another person in
> > connection with a Federal offense; or
> >
> > (4) causing a criminal prosecution, or a parole or probation
> > revocation proceeding, to be sought or instituted, or
> > assisting in such prosecution or proceeding;
> >
> > or attempts to do so, shall be fined under this title or imprisoned
> > not more than 3 years, or both.

18 U.S.C. § 1512(d). Plaintiff does not allege any facts to support the conclusion that any person was hindered, delayed, or prevented from attending or testifying in an official proceeding, reporting a federal offense, arresting someone, or initiating a criminal prosecution.

Moving to 18 U.S.C. § 1513, which addresses retaliation against witnesses, victims, or informants, the statute criminalizes the acts of killing, attempting to kill, causing bodily injury, or

damaging tangible property with the intent to retaliate. Plaintiff has not alleged that Defendants killed anyone or inflicted bodily injury, that Defendants damaged tangible property, or that Defendants threatened or attempted to do these acts.

### f.      The Mann Act

The Mann Act, 18 U.S.C. § 2421, prohibits the interstate transportation of an individual with the intent that the individual engage in prostitution or criminal sexual activity. Not a single allegation ties Defendants to the incident in New York, and any such inference would be wholly unreasonable. Plaintiff's conclusory accusation that the named Defendants have engaged in human trafficking in Minnesota is completely unsupported by any alleged facts. Allegations concerning lists of victims, behavior at conventions, and indoctrination practices do not involve any named Defendant. Moreover, Plaintiff's allegation "that in his personal opinion, John Hanson was the kind of man or attorney 'using prostitutes'" (Compl. ¶ 16) is inflammatory and frivolous and does not give rise to a predicate act.

### g.      Mail and Wire Fraud

Both mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1342, are listed as RICO predicate acts. *See* 18 U.S.C. § 1961(1)(B). Plaintiff claims that Defendants had a duty to disclose the Shriners' alleged human trafficking activities in their annual membership materials, newsletters, internet sites, and annual tax filings, and that their failure to do so constituted mail and wire fraud. Plaintiff fails to allege with particularity key components of fraud, however, such as the time and place of Defendants' fraudulent omissions, what was lost or obtained as a result, and most crucially, details establishing the named Defendants' direct involvement with or responsibility for those mailings and postings. *See U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (citations omitted). Accordingly, the allegations are insufficient to

meet the elevated pleading standard contained in Rule 9. Thus, Plaintiff has not pleaded a predicate act of mail or wire fraud.

### 2. Pattern of Racketeering Activity

To show a pattern of racketeering activity, Plaintiff must allege (1) two related predicate acts (2) signifying continued criminal activity. *United HealthCare Corp.*, 88 F.3d at 571. As to the first factor, Plaintiff has not adequately pleaded any predicate acts by the named Defendants. To properly state a claim for relief, Plaintiff must allege specific details establishing a pattern of racketeering activity by each Defendant, *see Crest Construction*, 660 F.3d at 357, and no such details are present here. In addition, Plaintiff's repeated use of imprecise phrases such as "pattern of racketeering" and "ongoing scheme" are "insufficient to form the basis of a RICO claim." *Id.* at 356. Consequently, Plaintiff has failed to allege a pattern of racketeering activity.

### 3. Standing

Although Plaintiff's RICO claim fails for several reasons, the biggest obstacle to his ability to sustain a RICO claim is his lack of standing. Standing has two components: "(1) an injury to 'business or property' (2) caused 'by reason of' a RICO violation.'" *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 951 (8th Cir. 1999) (quoting *Sedima*, 473 U.S. at 495-96). The second component, causation, is absent here.

An individual has standing to sue under RICO only if he has sustained an injury to his business or property caused by the predicate acts. *Sedima*, 473 U.S. at 496. "But for" causation will not suffice; there must be a "direct relation"—that is, proximate cause—between the injury and the conduct. *Hamm*, 187 F.3d at 952 (quoting *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). In *Hamm*, the plaintiffs alleged that the defendant engaged in a fraudulent scheme promoting the use of defendant's products. *Id.* The scheme was not directed at the

plaintiffs, who were current and former employers of the defendant company, but at hospitals and medical personnel. *Id.* Because the plaintiffs "were not the intended targets of the alleged racketeering activity, they did not have standing to bring a civil RICO suit." *Id.*

Similarly, in the case at hand, most of the alleged predicate acts were not directed at Plaintiff and did not cause him harm. The only purported predicate acts allegedly directed at Plaintiff were retaliation and intimidation. As discussed above, however, Plaintiff was not a victim, witness, or informant. Plaintiff did not report the possible commission of a federal offense by Defendants. He does not allege that Defendants inflicted bodily injury on him or caused tangible damage to his property, or that Defendants threatened or attempted to do so. Plaintiff's conclusory allegation that Defendants tampered with a witness is not supported by facts evidencing the named Defendants' personal involvement, the identity of the witness, the circumstances surrounding the contact, or what testimony or evidence was impacted. Plaintiff does not allege facts creating a reasonable inference that any particular Defendant altered, mutilated, or concealed evidence, or that Defendants acted corruptly in obstructing, influencing, or impeding an official proceeding.

In sum, any injury to Plaintiff's business earnings was "derivative and incidental, not direct." *See Hamm*, 187 F.3d at 953. Thus, he lacks standing to assert a RICO claim against Defendants.

### B.     Plaintiff's RICO Conspiracy Claim

Title 18 U.S.C. § 1962(d) prohibits individuals from conspiring to violate RICO. Although the Eighth Circuit has not decided the issue, other courts have determined that when a substantive RICO claim fails, a corresponding conspiracy claim fails as well. *Jaworski v. Rollupspacovers, Roll-it Spa Covers, Creative Innov. LLC*, 11-cv-1816 (DSD/JSM), 2012 WL

1130684, at *3 (D. Minn. Apr. 3, 2012); *Murrin v. Fischer*, 07-cv-1295 (PJS/RLE), 2008 WL 540857, at *17 (D. Minn. Feb. 25, 2008). Accordingly, because Plaintiff failed to state a substantive RICO claim under § 1962(c), his § 1962(d) conspiracy claim should be dismissed as well.

Alternatively, the conspiracy claim fails because Plaintiff has not sufficiently alleged that his injury was caused by a RICO predicate act. *See Bowman v. W. Auto Supply Co.*, 985 F.2d 383, 388 (8th Cir. 1993); *Hamm*, 187 F.3d at 954 (citing *Bowman*). Where a plaintiff fails to allege an injury caused by a RICO predicate act, he lacks standing, and his conspiracy claim must be dismissed. *Bowman*, 985 F.2d at 388.

### C. Tortious Interference with Prospective Contractual Relations

Plaintiff alleges Defendants employed others to wiretap and follow him in an effort to intimidate and retaliate against him for working for Ellis. He claims this activity frightened and intimidated Ellis from hiring him for future paralegal and investigative work, which caused him to lose $52,000 in revenue. Plaintiff also contends that Defendants hindered his progress as an author of fiction.

Minnesota has adopted the Restatement (Second) of Torts definition of a claim for tortious interference with prospective contractual relations.

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relations, whether the interference consists of:
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation.

14

*United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 632-33 (Minn. 1982) (quoting Restatement (Second) of Torts § 766B (1979)).

The complaint does not allege facts creating a reasonable inference that Defendants intentionally interfered with prospective contractual relations between Plaintiff and the Ellises. First, Plaintiff does not assert the existence of a prospective contractual relationship. Indeed, once the Ellises' state court case was dismissed, it is reasonable to infer that Plaintiff's services were no longer necessary. Second, Plaintiff does not allege that Defendants had knowledge of a prospective relationship. Even if Defendants knew of an *existing* contractual relationship, this knowledge does not necessarily extend to a *prospective* one. Third, Plaintiff does not aver that Defendants intentionally subverted the prospective relationship by monitoring and following him. The reasonable inference from this behavior is that Defendants wanted to know what Plaintiff was doing in his present work for the Ellises, not to prevent Plaintiff from contracting with the Ellises for future services. Accordingly, the interference with prospective contractual relations claim should be dismissed.

Alternatively, the claim may be dismissed without prejudice for lack of jurisdiction. The only claim conferring federal jurisdiction was the RICO claim, which the Court has recommended be dismissed. Therefore, supplemental jurisdiction over Plaintiff's state law claims is properly declined. *See* 28 U.S.C. § 1367(c)(3).

### D.     Tortious Interference With Contract

The elements of a tortious interference with contract claim are: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 25 (Minn. 1982). Plaintiff has failed to allege facts

showing that he entered into a contract with the Ellises, that Defendants knew about the contract, or that Defendants intentionally caused Plaintiff to breach the contract. Thus, the claim should be dismissed. Alternatively, the claim may be dismissed without prejudice for lack of jurisdiction, should supplemental jurisdiction over Plaintiff's state law claims be declined. *See* 28 U.S.C. § 1367(c)(3).

### E. Defendants John and Jane Does 1-10

In addition to the named Defendants, Plaintiff's complaint names John and Jane Does 1-10. There are no factual allegations whatsoever concerning these Defendants, much less allegations sufficient to state a claim against them. Accordingly, all claims against Defendants John and Jane Does 1-10 should be dismissed. *See Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (reversing dismissal of unidentified defendants when a "complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery," but upholding dismissal of other unidentified defendants about whom no factual allegations were made).

### F. Conclusion

Defendants' motion to dismiss should be granted as to all of Plaintiff's claims against them. All claims against the unidentified Doe Defendants should also be dismissed.

## III. PLAINTIFF'S FIRST MOTION TO AMEND COMPLAINT

Plaintiff filed his first motion to amend the complaint (ECF No. 15) on August 6, 2012. Although the Court typically would address this motion in an order, the motion calls for a futility analysis implicating dispositive issues. Thus, the Court elects to address the motion to amend in this Report and Recommendation.

The motion to amend may be denied on several grounds, the first of which is procedural. Plaintiff did not provide either a copy of the proposed amended pleading or a redlined version showing the amendments, both of which are required by District of Minnesota Local Rule 15.1(b). Plaintiff's motion should be denied accordingly.

Plaintiff is not entitled to amend as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1). That rule permits a plaintiff to amend without court leave in only two circumstances: (1) if the amended complaint is filed within twenty-one days of the initial complaint, or (2) if the amended complaint is filed within twenty days after service of the answer or a motion to dismiss. Neither circumstance is present here. At this stage of the case, Plaintiff may amend his complaint only with leave of the Court.

As a pro se party, Plaintiff may be granted more procedural leeway than a represented party. Thus, as an alternative ground for dismissal, the Court recommends that Plaintiff's motion be denied on the merits. A court should freely grant leave to amend a pleading when justice so requires, Fed. R. Civ. P. 15(a)(2), but the right to amend is not absolute. A court may deny amendment for "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility." *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007) (citation omitted). When assessing the futility of a proposed amendment, the court considers whether the amendment could withstand a Rule 12(b)(6) motion to dismiss. *DeRoche v. All Am. Bottling Corp.*, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998) (citations omitted); *see In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007) ("[W]hen a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion).

Although Plaintiff did not submit a proposed amended complaint for the Court's consideration, his memorandum lists the paragraphs he proposes to add to the complaint. He also asks to name Britton Weimer as a defendant.

> In addition to adding in Britton Weimer as a named Defendant, Plaintiff proposes these short additions to a First Amended Complaint:
>
> At page 75:
>
> . . . 117-a. Britton Weimer, before and since the Petition for Cert[.] was prepared and filed with the United States Supreme Court, has on multiple occasions communicated with M. Keogh to get Keogh and to influence the [Ellises] to change their stories about why and when they distanced themselves from Plaintiff, and that it was not due to Jester retaliation.
>
> 117-b. Keogh has refused to endorse the refund check over to the [Ellises], despite stating that Keogh was not working with Weimer and that Keogh had earned the full amount of the refund check since he dropped his representation of the [Ellises].
>
> 117-c. If Keogh and/or the [Ellises] can be tampered with to change their testimony, it could undermine Plaintiff's claims as to Jester retaliation, and damages to Plaintiff's business or profession which are a necessary element to Plaintiff's RICO claims.
>
> 117-d. In addition, one or more of the witnesses developed by Plaintiff and/or the [Ellises] as to being recruited by Jon Hanson to join the Jesters, may be afraid of being prosecuted for misprison [sic] of a felony or conspiracy like Lesinski out in Buffalo, or afraid of retaliation similar to what has happened to other Jesters or to Plaintiff.
>
> 117-e. Weimer's actions appear similar in both duration and scope to the modus operandi of the Jesters used out in Buffalo, and nationwide to stifle or undermine any confrontations over the Jester's human trafficking, and to how Weimer reached out and touched Judge Marilyn Brown Rosenbaum so as to manage or control affairs in the state courts, so as to intimidate attorney Keogh, Plaintiff and the [Ellises].

(Pl.'s Mem. Supp. First Mot. Amend at 25-26.)

None of these proposed allegations would save Plaintiff's claims from dismissal. Considering the amendments together with the existing allegations, the combined allegations do not evince a RICO predicate act, do not establish a pattern of racketeering activity, do not create standing for Plaintiff to assert a RICO claim against Defendants, and do not state a claim for RICO conspiracy. Nor does the proposed pleading contain sufficient factual matter to adequately plead claims for tortious interference with prospective contractual relations or tortious interference with contract. Accordingly, the Court recommends that Plaintiff's first motion to amend the complaint be denied as futile.

## IV.  PLAINTIFF'S SECOND MOTION TO AMEND COMPLAINT

Four days after the hearing on Defendants' motion to dismiss and Plaintiff's first motion to amend, Plaintiff filed a second motion to amend the complaint. This time, he filed the proposed pleading, as required, with his motion papers. The proposed complaint totals eighty-seven pages in length.

There are numerous procedural deficiencies with Plaintiff's second motion to amend. There is no redlined version showing how the proposed amended complaint differs from the operative complaint, which violates District of Minnesota Local Rule 15.1(b). In addition, Plaintiff did not contact the Court's chambers to schedule a hearing on the motion, as required by Local Rule 7.1(b). Lastly, Plaintiff did not file a meet-and-confer statement, notice of hearing, or memorandum of law, all of which are required by Local Rule 7.1(b)(1). This Court has previously advised Plaintiff that even though he is appearing pro se, he must comply with the Local Rules. (Order at 2, Aug. 16, 2012, ECF No. 21.) Plaintiff has not heeded that admonishment in filing his second motion to amend the complaint. Accordingly, the motion should be denied on procedural grounds.

Alternatively, the motion should be denied as futile. Based on a comparison between the second proposed amended complaint and the original complaint, the proposed allegations of substance include Hanson's recruiting efforts on behalf of the Jesters (Second Am. Compl. ¶ 10, ECF No. 26-1); Plaintiff's loss of income in 2012, as well as 2011 (*id.* ¶¶ 18, 55); and witness tampering by Britton Weimer (*id.* ¶¶ 107.O, 117-a-s.). The second proposed amended complaint also omits Krall as a defendant and adds Weimer as a defendant.

The cursory allegations concerning Hanson's recruiting efforts and Plaintiff's additional loss of income do not affect the Court's previous legal analysis concerning the viability of Plaintiff's claims. The allegations simply have no bearing on the merits. As for Weimer, Plaintiff seeks to allege that Weimer influenced the Ellises' attorney, M. Keogh, to cease representing them; that Weimer pressured the Ellises to change their story about why they distanced themselves from Plaintiff; that Weimer caused the Ellises to stop paying Plaintiff; and that Weimer wrote an ex parte letter to Judge Rosenbaum during the state court cases asking that the Ellises' cases be consolidated.

As with Plaintiff's first proposed amended complaint, none of these allegations against Weimer save Plaintiff's claims from dismissal. Considering the proposed allegations together with the existing allegations, Plaintiff still has not alleged a RICO predicate act, a pattern of racketeering activity, standing to assert a RICO claim, or a claim for RICO conspiracy. The proposed pleading also does not contain sufficient factual matter to state a claim for tortious interference with prospective contractual relations or tortious interference with contract. Accordingly, the Court recommends that Plaintiff's second motion to amend the complaint be denied as futile.

## V.     RECOMMENDATION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Defendants' Joint Motion to Dismiss (ECF No. 2) be **GRANTED**;

2.      Plaintiff's First Motion to Amend Complaint (ECF No. 15) be **DENIED**;

3.      Plaintiff's Second Motion to Amend Complaint (ECF No. 26) be **DENIED**;

4.      This matter be **DISMISSED WITH PREJUDICE**; and

5.      **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: September 19, 2012

 s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge


### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **October 5, 2012**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the District Judge is not required to review a transcript or the District Judge directs otherwise.