UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael W. Blodgett, | Civil No. 12-0301 (JRT/JJG) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Jon Hanson, Tony Krall, The Trustees of Zuhrah Shrine, John and Jane Does 1-10, and Court 53 Royal Order of Jesters, | |
| Defendants. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the Court on Defendant Trustees of Zuhrah Shrine's Motion for Sanctions (ECF No. 32). The Trustees of Zuhrah Shrine ("Trustees") assert that Plaintiff Michael W. Blodgett ("Blodgett") has filed or assisted others in filing numerous harassing and frivolous lawsuits against individuals and entities associated with the Zuhrah Shrine. The Trustees request an injunction preventing Blodgett from engaging in similar litigation in the future, as well as an award of attorneys' fees for bringing the sanctions motion. Blodgett did not oppose the motion in writing or appear at the hearing.

The Honorable John R. Tunheim, United States District Judge, referred the motion to this Court in an Order of Reference dated October 1, 2012 (ECF No. 42). For the reasons set forth below, the Court recommends that Blodgett be enjoined from future litigation and that $4,394.00 in attorneys' fees be awarded.

## I. BACKGROUND

### A. Procedural History of the Current Action

Blodgett is representing himself in this matter. Defendants are Jon Hanson ("Hanson"), Tony Krall ("Krall"), the Trustees, John and Jane Does 1-10, and Court 53 Royal Order of Jesters ("Court 53"). Hanson and Krall are members of the Zuhrah Shrine and Court 53, and Krall presently serves as the Zuhrah Shrine's 2012 Potentate. Hanson and Krall are also partners in the law firm Hanson, Lulic and Krall, LLC. The gravamen of Blodgett's 78-page complaint is that Defendants and other Shriners are engaged in a nationwide human trafficking scheme in violation of the Rackateer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c) and (d). In addition to the alleged predicate act of human trafficking, Blodgett claims that Defendants engage in predicate acts of retaliation against and intimidation of witnesses, victims, and informants; mail and wire fraud; money laundering; obstruction of justice; interference with commerce; and theft. Blodgett also brings claims for interference with prospective contractual relations and tortious interference with contract.

Soon after Blodgett commenced this action, he served extensive and burdensome discovery requests on numerous, non-party Shrine members. He also sought to add attorney Britton Weimer as a defendant. On September 19, 2012, this Court issued a protective order staying all discovery. The Court also denied Blodgett's request to amend the complaint and recommended that Defendants' motion to dismiss be granted in full.

### B. Previous Litigation Between Andrew Ellis and Defendants

Blodgett's claims against Defendants arise from his association with Andrew Ellis ("Ellis"), an attorney. Ellis hired Blodgett as an investigator and paralegal to work on several lawsuits Ellis and his wife Harriet filed against numerous entities and individuals associated with

the Zuhrah Shrine. Ellis was a member of the Zuhrah Cycle Corps, a subsidiary of the Zuhrah Shrine, for more than fifty years until he was expelled in 2004. *Ellis v. Estate of Burkstrand*, Case. No. A08-1878, 2009 WL 2595953, at *1 (Minn. Ct. App. Aug. 25, 2009). After Ellis's expulsion, he brought suit in Hennepin County District Court for defamation and wrongful expulsion. *Id.* Ellis was represented by attorney Dennis Schertz, and the Cycle Corps was represented by attorney Britton Weimer in those proceedings. *Id.* Ultimately, the state district court granted summary judgment to the defendants, which was affirmed on appeal. *Id.* at *3.

Ellis then filed a second action for breach of contract and breach of fiduciary duty against the Zuhrah Shrine; Jon Hanson, who had represented the Shrine during internal administrative proceedings; and several others. *Ellis v. Hanson*, Case. No. A11-101, 2011 WL 5829104, at *1 (Minn. Ct. App. Nov. 21, 2011). While the second case was pending, Ellis filed a third action asserting the same claims against the same defendants, but also added Hanson's law firm as a defendant and alleged a claim of fraud on the court. *Id.* The second and third cases were consolidated and dismissed on the grounds of res judicata. *Id.* The United States Supreme Court denied Ellis's petition for writ of certiorari on October 1, 2012. *Ellis v. Hanson*, Case. No. 11-1369, --- S. Ct. ----, 2012 WL 1670165 (Oct. 1, 2012).

According to Blodgett, he unearthed evidence of human trafficking by Defendants during his work as a paralegal and investigator for Ellis in 2009 and 2010. (Compl. ¶ 36.) Blodgett claims that Court 53 is linked to a small group of Jesters in New York, including retired New York State Supreme Court Justice Ronald H. Tills, who were convicted of transporting prostitutes across state lines during a Shrine convention. (*Id.* ¶¶ 6, 11(c), 36, 77, 95.)

### C. The Declaratory Judgment Action

On August 12, 2012, Economy Premier Assurance Company filed a declaratory judgment action against all of the parties in this case, seeking a declaration of the rights, duties, and obligations under a policy of insurance Economy issued to Hanson. Complaint at 1, 3, *Econ. Premier Assurance Co. v. Blodgett*, Case No. 12-CV-1961 (JRT/JJK) (D. Minn. Aug. 10, 2012). After Hanson was served with the complaint in the instant action, he provided Economy with a copy and asked Economy to defend and indemnify him against Blodgett's claims. Economy denied any such duties and brought an action for a declaration of no coverage. In Blodgett's answer, he made accusations similar to those asserted in the present action. Specifically, Blodgett accused Hanson of violating RICO; engaging in predicate acts such as witness tampering, income tax fraud, and human trafficking; and threatening and intimidating him.

### D. Prior Litigation Commenced by Blodgett

Blodgett has filed several frivolous and vexatious lawsuits in the past, although not against the Defendants named in the instant case. Those lawsuits stemmed from criminal and civil proceedings the Federal Trade Commission ("FTC") initiated in 1991 against Blodgett and his rare coin business, T.G. Morgan, Inc. *See In re T.G. Morgan, Inc.*, 394 B.R. 478, 481 (B.A.P. 8th Cir. 2008). The business was essentially a Ponzi scheme, *Blodgett v. Commissioner of Internal Revenue*, 394 F.3d 1030, 1033 (8th Cir. 2005), and Blodgett was charged with and convicted of several counts of fraud, *see United States v. Blodgett*, Case No. 93-3652, 1994 WL 421756, at *1 (8th Cir. Aug. 15, 1994). Under the settlement of the civil case, Blodgett's assets were transferred to a receiver, who divided them into a settlement estate for the compensation of victims and a litigation estate to pay Blodgett's legal fees. *In re T.G. Morgan, Inc.*, 394 B.R. at 481. Several of T.G. Morgan, Inc.'s creditors filed an involuntary bankruptcy petition against the

company, and John Stoebner was appointed the trustee of the eventual Chapter 7 proceeding. *See id.* The assets of the settlement estate were turned over to the bankruptcy estate, and the bankruptcy court oversaw all claims. *See id.*

For many years thereafter, Blodgett was "highly prolific in litigation involving T.G. Morgan and the Trustee—in the Bankruptcy Court, the Minnesota District Court, and the Eighth Circuit—to the point where [he was] admonished and enjoined from prosecuting any action against the Trustee and others without an attorney or prior written authorization from a judicial officer of the District Court of Minnesota." *Id.* Blodgett's copious litigation activity included *Blodgett v. Gilbert*, Case No. 27-CV-93-016438 (Minn. Dist. Ct. filed Sept. 22, 1993) (malpractice action); *Blodgett v. Meshbesher*, Case No. 27-CV-94-006186 (Minn. Dist. Ct. filed Apr. 22, 1994) (malpractice action); *Blodgett v. Stoebner*, Case No. 94-CV-0088 (D. Minn. filed July 7, 1994) (bankruptcy appeal); *Blodgett v. Stoebner*, Case No. 94-CV-106 (D. Minn. filed August 16, 1994) (bankruptcy appeal); *Stoebner v. Blodgett*, Case No. 95-CV-0009 (D. Minn. filed Jan. 12, 1995) (bankruptcy appeal); *Blodgett v. United States*, Case No. 95-CV-0680 (D. Minn. filed July 24, 1995) (28 U.S.C. § 2255 motion to vacate sentence); *Blodgett v. Franco*, Case No. 98-CV-0049 (D. Minn. filed Jan. 9, 1998) (RICO claim); and *Blodgett v. United States*, Case No. 99-CV-0923 (D. Minn. filed June 17, 1999) (28 U.S.C. § 2241 petition for writ of habeas corpus).

The prior injunction to which the Eighth Circuit bankruptcy panel referred in *In re T.G Morgan, Inc.* was issued in *Blodgett v. Franco*, Case No. 98-CV-0049. The Honorable James M. Rosenbaum, United States District Judge, found that Blodgett had an "extensive history of baseless, vexatious, harassing, and repetitive litigation," which the court construed as "bad faith litigation." Order at 1, *Blodgett v. Franco*, Case No. 98-CV-0049 (D. Minn. June 30, 1999),

*aff'd*, 221 F.3d 1341 (8th Cir. 2000) (unpublished table disposition). The court therefore enjoined Blodgett from bringing any future lawsuits against the defendants named in that case, the United States, the FTC, and any other defendant previously sued in a related matter, without the signature of an attorney admitted to practice in the District of Minnesota or prior written approval by a judicial officer of this District. *Id.* at 2-3.

## II. DISCUSSION

Based on Blodgett's allegations and litigation practices in the present action and his history of vexatious and bad faith litigation tactics, the Trustees ask the Court to impose sanctions. Their request falls under two lines of authority: the Court's inherent authority and Federal Rule of Civil Procedure 11.

### A. Inherent Authority

A court has the inherent authority to impose sanctions when necessary to deter a litigant from engaging in "conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). This authority includes the power to assess attorney's fees when the litigant has acted vexatiously, wantonly, or in bad faith. *Id.* at 45-46 (quotations omitted). The availability of sanctions pursuant to statute or the Federal Rules of Civil Procedure does not displace a court's inherent authority. *Id.* at 46.

It is well-established that a court may enjoin a party from bringing future lawsuits. *E.g.*, *Ruderer v. United States*, 462 F.2d 897, 899 (8th Cir. 1972). In *Ruderer*, a pro se plaintiff brought a libel claim under the Federal Tort Claims Act against his former employer. *Id.* at 898. The complaint was dismissed for failure to state a claim. *Id.* Ruderer had previously sued both the former employer and twenty-one former fellow employees, all in separate lawsuits. *Id.* The district court therefore issued an injunction preventing Ruderer from bringing any future similar

claims in the United States District Court for the Eastern District of Missouri. *Id.* Affirming the decision, the Eighth Circuit explained that Ruderer's "affinity for litigation, standing alone, would not provide sufficient reason for issuing such an injunction." *Id.* at 899. The injunction was warranted because Ruderer "filed the present suit in bad faith and in furtherance of a personal vendetta against the United States." *Id.* In addition, Ruderer had been given "a full opportunity to present his claims" and future lawsuits on those claims would waste the court's time. *Id.*

*Ruderer* indicates that the key consideration is not the number of cases filed, but whether the plaintiff acted in bad faith and was given a full opportunity to litigate his or her claims. Pursuing a claim through the resolution of a Rule 12(b)(6) motion is considered a full opportunity to litigate in this context. *See Ruderer*, 462 F.2d at 898 (affirming dismissal for failure to state a claim).

The Court finds that Blodgett acted in bad faith in filing this lawsuit. The allegations in the complaint are wanton, vexatious, and indicative of a personal vendetta bred during Blodgett's work for Ellis. Blodgett's service of premature and burdensome discovery requests on numerous individuals associated with the Zuhrah Shrine further evidences his nefarious intent. Blodgett's history of filing lawsuits in bad faith, while not incriminatory in and of itself, demonstrates his capability of using the judicial system to vex and harass others.

Granted, Blodgett was not a named party in the state court actions filed by Ellis, but this does not give the Court pause. As *Ruderer* made clear, the number of cases filed by the offending party is not the deciding factor. *See Ruderer*, 462 F.2d at 899. Moreover, even though Blodgett was not a named party, he had a clear hand in the litigation of Ellis's claims. Indeed, Blodgett takes credit for discovering evidence of the most disparaging and salacious allegations,

7

and many of the allegations Blodgett makes in this case mirror the averments made by Ellis in the state court actions.

The Court next finds that Blodgett has been given a full opportunity to present and litigate his claims. Blodgett opposed Defendants' motion to dismiss in writing, appeared at the hearing, and filed written objections to the Court's Report and Recommendation. This Court concluded that his claims are patently meritless. Any further suits based on those claims would be a waste of judicial resources and the resources of the parties.

Given the bad faith demonstrated by Blodgett in pursuing his claims against the Trustees and the other Defendants, the Court concludes an injunction prohibiting future litigation is warranted. However, the particular injunction requested by the Trustees is too broad, because it contains no geographic limitations. In their proposed order, the Trustees request an injunction prohibiting Blodgett

> from prosecuting any action or claim, arising out of or that could have arisen out this action, against Defendants[,] the Trustees of Zuhrah Shrine, Zuhruh [sic] Shrine, all entities related to the Shriners, the Royal Order of Jesters, Court 53 Royal Order of Jesters, their divisions, officers, directors, members, attorneys, representatives, and attorneys Hanson and Krall, by way of any cause or pleading, . . . absent prior written authorization from a Judicial Officer of this Court.

(Trustees' Proposed Order at 2.) The Eighth Circuit has instructed that injunctions against future litigation must be limited to actions filed in federal district courts within the Circuit. *See Van Deelen v. City of Kansas City*, 262 F. App'x 723, 724 (8th Cir. 2007) (modifying nationwide ban to districts within the circuit). Therefore, the Court will recommend that the injunction be limited to federal district courts within the Eighth Circuit.

Turning to the request for attorney's fees, the Trustees ask for an award in the amount of $4,394.00, which is the amount of fees their attorneys incurred in drafting, serving, and filing the

motion for sanctions. The Court finds $4,394.00 is a reasonable and appropriate amount to sanction Blodgett for his bad-faith and vexatious litigation practices in this case.

**B.      Rule 11**

Federal Rule of Civil Procedure 11(b) provides that an attorney or unrepresented party certifies to the best of his or her knowledge that:

> (1) [a pleading, written motion, or other paper] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). If a court finds a violation of Rule 11(b), it "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c). While "Rule 11 makes sanctions mandatory when a violation of the Rule occurs, . . . [t]he imposition of sanctions is a serious matter and should be approached with circumspection." *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir. 1987).

Before moving for Rule 11 sanctions, a party must serve the motion on the offending party and allow that party twenty-one days to cure the violation. Fed. R. Civ. P. 11(c). Once that period of time passes, the moving party may present the motion to the court. *Id.* If the court determines that Rule 11(b) has been violated, it may impose an appropriate sanction. Fed. R. Civ. P. 11(c)(1). Here, the Trustees served Blodgett with the sanctions motion on August 17, 2012.

9

Blodgett did not withdraw or correct any pleadings or papers within twenty-one days. The Trustees then properly filed the motion.

As for the merits, the Court finds that Blodgett's RICO claim against the Trustees and the other Defendants had no factual support, was not warranted by existing law, and was filed for the purpose of harassing Defendants. The allegations of human trafficking and prostitution made in support of his RICO claim, in particular, were frivolous and incendiary. Therefore, the Court finds that a Rule 11 sanction is warranted.

The Court has already found that an award of attorneys' fees in the amount of $4,394.00 should be imposed under the Court's inherent authority as a sanction for Blodgett's bad faith and vexatious litigation tactics. In the alternative, the Court recommends that an award of attorney's fees in the amount of $4,394.00 be imposed as a Rule 11 sanction. Such an award is a relatively minimal sanction and will not unduly punish Blodgett.

### C. Request to Seal the Proceedings

Although not included in the motion itself, the Trustees ask the Court in their memorandum of law to seal all pleadings, attachments, and exhibits filed in this case. The Trustees did not cite any law in support of this request, nor did the Trustees make any factual showings or arguments that compelling interests outweigh the public's right of access to judicial records. The Court declines to do so for them.

## III. RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Blodgett be enjoined from prosecuting any action or claim, in any United States District Court located within the Eighth Circuit Court of Appeals, arising from or related to the

allegations made in this action, against Jon Hanson, Tony Krall, Court 53 Royal Order of Jesters, The Trustees of Zuhrah Shrine, the Zuhrah Shrine, all entities or individuals related to the Shriners or Jesters, including their divisions, officers, directors, members, attorneys, and representatives, absent prior written authorization from a judicial officer of the District of Minnesota, or unless the pleading is signed by an attorney duly admitted to practice in this District; and

2. Blodgett be ordered to pay attorneys' fees in the amount of $4,394.00.

Dated: October 30, 2012

  s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **November 15, 2012**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the District Judge is not required to review a transcript or the District Judge directs otherwise.