# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL W. BLODGETT, | Civil No. 12-301 (JRT/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ON REPORTS AND RECOMMENDATIONS OF MAGISTRATE JUDGE** |
| JON HANSON, TONY KRALL, THE TRUSTEES OF ZUHRAH SHRINE, JOHN AND JANE DOES 1-10, and COURT 53 ROYAL ORDER OF JESTERS, | |
| Defendants. | |

Michael W. Blodgett, 3064 East Eighty-Fifth, Inver Grove Heights, MN 55076, *pro se*.

Dale M. Wagner and Jessica L. Klander, **BASSFORD REMELE, PA**, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402, for defendants Hanson and Krall.

David S. Wething, **EASTLUND SOLSTAD CADE & HUTCHINSON, LTD.**, 4200 County Road 42 West, Savage, MN 55378, and Dale W. Wagner and Jessica L. Klander, **BASSFORD REMELE, PA**, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402for defendant Trustees of Zuhrah Shrine.

Thomas J. Shroyer and Timothy R. Franzen, **MOSS & BARNETT, PA**, 90 South Seventh Street, Suite 4800, Minneapolis, MN 55402, for defendant Court 53 Royal Order of Jesters.

*Pro se* plaintiff Michael W. Blodgett brings claims against Jon Hanson, Tony Krall, The Trustees of Zuhrah Shrine, Court 53 Royal Order of Jesters, and ten unnamed defendants (collectively, "defendants"). The heart of Blodgett's lengthy complaint is that

defendants and other members of a secret society known as the Royal Order of Jesters are engaged in a nationwide human trafficking scheme in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) and (d), ("RICO"). Blodgett also brings state law claims for interference with existing and prospective contractual relations. The matter is currently before the Court on Blodgett's objections to United States Magistrate Judge Jeanne J. Graham's September 19, 2012, Report and Recommendation, which granted defendants' motion to dismiss and denied Blodgett's motions to amend his complaint, (Report & Recommendation, Sept. 19, 2012, Docket No. 31 ("First R&R")), and the Magistrate Judge's October 30, 2012, Report and Recommendation, which enjoined Blodgett from pursuing future similar litigation absent court approval or an attorney and ordered Blodgett to pay defendants $4,394 for attorneys' fees, (Report & Recommendation, Oct. 30, 2012, Docket No. 48 ("Second R&R")).[1] For the reasons explained below, the Court will overrule Blodgett's objections and adopt the Reports and Recommendations. Blodgett's RICO claims will be dismissed with prejudice; the Court will decline to exercise supplemental jurisdiction over Blodgett's state law claims and dismiss those claims without prejudice; Blodgett will be enjoined from pursuing similar litigation without an attorney in the federal district courts

---

[1] In conjunction with the First R&R, the Magistrate Judge also placed a stay on discovery pending the Court's review of the R&R. (Order, Sept. 19, 2012, Docket No. 30.) Blodgett had filed numerous discovery requests on defendants and many other individuals and also requested that the Clerk of Court issue a number of subpoenas. (*Id.* at 1.) The Magistrate Judge found that good cause to issue a protective order existed because the parties had not yet met for a scheduling conference and no scheduling order was in place, making Blodgett's discovery requests premature. (*See id.* at 1-2, citing Fed. R. Civ. P. 26(c), (d)(1) and (f).)

of the Eighth Circuit absent authorization from a judicial officer; and Blodgett will be ordered to pay $4,394 in attorneys' fees to The Trustees of Zuhrah Shrine.

**BACKGROUND**

Blodgett, who is proceeding *pro se* in this matter, filed a seventy-eight-page complaint alleging RICO violations and interference with existing and prospective contractual relations. (Compl., Feb. 6, 2012, Docket No. 1.) Blodgett apparently learned about the Jesters' alleged human trafficking while working as a paralegal and investigator for Andrew Ellis and his wife, Harriet, while the Ellises pursued a series of unsuccessful lawsuits in state court against Hanson (a defendant in the present action) and other Shriner entities. (*Id.* ¶ 1.) Those lawsuits related to Ellis's expulsion from a group within the Shriners. (*Id.* ¶ 15.) The second and third actions brought by Ellis were consolidated, (*Id.* ¶ 10(e)), and dismissed on the basis of res judicata. (*Id.* ¶ 39; *see also Ellis v. Hanson*, No. A11-101, 2011 WL 5829104, at *1 (Minn. Ct. App. Nov. 21, 2011).) Blodgett alleges that the state court decision made by Judge Marilyn Rosenbaum "came directly, or by conspiracy in response to" an *ex parte* letter Hanson's attorney, Britton Weimer, sent to Judge Rosenbaum. (Compl. ¶¶ 38, 40.)

Blodgett's only purported connection to defendants is his allegation that defendants conducted surveillance of him while he was working with Ellis and various lawyers to investigate and uncover wrongdoing within the Jester organization. (*Id.* ¶¶ 2, 4, 65-66.) Blodgett filed a report with the St. Paul Police Department relating to the surveillance. (*See* Pl.'s Requests for Hearing on and Objections to Magistrate's Report

and Recommendation at 83-84, Oct. 1, 2012, Docket No. 41 ("First Objections").) Blodgett alleges that the surveillance was conducted as retaliation for his investigatory work and was intended to intimidate him, Ellis, and others. (*Id.* ¶ 18.) Blodgett claims that he "lost his stream of revenue for paralegal and investigative work for approximately one year mostly in 2011 after the intimidations frightened off Ellis . . . and the intimidations also interfered with [Blodgett]'s profession of writing and publishing by delaying for many months his progress in those works." (Compl. ¶ 18.) These alleged damages amount to $52,000. (*Id.* ¶ 18.)

Blodgett's allegations regarding the intimidation, which the Court will discuss in somewhat more detail below, form the basis of Blodgett's state law claims for interference with existing and prospective contractual relations. They also, according to Blodgett, amount to a "predicate act" under the RICO statute. (*See, e.g.*, *id.* ¶¶ 2, 4.) While the intimidating surveillance is the only alleged predicate act that involves Blodgett personally, the lion's share of Blodgett's allegations relate to human trafficking in violation of the Mann Act. (*See, e.g.*, *id.* ¶¶ 1-2, 5-10.)

Blodgett's core allegation is that "the Jesters operate just like the mafia; but with 22,000 members nationwide whose main or sole purpose is human trafficking which they operate secretly under the guise of being good, trustworthy Shriners to whom the public can direct US $Millions in funds annually and rest assured such funds are being put to good, charitable purpose." (*Id.* ¶ 1.) Blodgett relies heavily on criminal proceedings involving four Jesters in Buffalo, New York, including retired New York State Supreme Court Justice Ronald H. Tills. (*See, e.g.*, *id.* ¶¶ 1, 6, 9, 10(f), 11(c).) Justice Tills and

other Jesters including his former law clerk pleaded guilty to transporting a prostitute across state lines during a Shriner Convention, and another Jester pleaded guilty to failing to report actual knowledge of human trafficking. (*Id.* ¶¶ 6, 28.) Blodgett acknowledges in the complaint that "[i]t is not known at this time if Jon Hanson or local Court 53 Jesters or Tony Krall have trafficked in children; but other Jesters are facing civil penalties or prosecution for trafficking in children . . . . " (*Id.* ¶ 12.)[2]

The Magistrate Judge summarized Blodgett's RICO allegations as follows:

> Plaintiff has listed RICO predicate acts of human trafficking in violation of the Mann Act; intimidation and retaliation of witnesses, victims, and informants; mail fraud; wire fraud; money laundering; obstruction of justice; interference with commerce; and state law violations of theft, obstruction of justice, false tax reporting, and racketeering. ([Compl.] ¶¶ 2, 74.) Plaintiff also implies that the Jesters have unlawfully obtained favorable tax treatment and deducted their expenses for human trafficking as tax exempt. (*Id.* ¶¶ 5, 11(b).)
>
> With respect to the alleged Mann Act violations, Plaintiff claims that Jesters collect and maintain lists of human trafficking victims for use at their conventions. (*Id.* ¶ 77.) He asserts that Mann Act violations occur at least three or four days each month at local, state, and national levels. (*Id.* ¶ 78.) According to Plaintiff, each new Jester must commit a trafficking act in view of other Jesters to discourage him from reporting any misconduct. (*Id.* ¶ 88.) Plaintiff alleges that Defendants had knowledge of, but failed to report, Mann Act violations. (*Id.* ¶ 73.)
>
> As for mail fraud and wire fraud, Plaintiff avers that Defendants mailed ex parte letters to Judge Rosenbaum during the pendency of the state court actions, seeking to be dismissed as defendants. (*Id.* ¶ 96.) Plaintiff characterizes those mailings as fraud on the court. (*Id.*) In addition, Plaintiff claims that each publication of The Arabian, a Shriner newsletter,

---

[2] Blodgett also relies heavily on a federal case in Missouri that, according to media outlets, represented the United States' first attempt to prosecute a human trafficking ring under RICO. (*See, e.g.*, Compl. ¶¶ 6, 10(f), 46; *see also* http://seattletimes.com/html /nationworld/2009673975_apushumantrafficking.html (last visited Feb. 21, 2012).)

constituted mail fraud because Defendants failed to disclose the Jesters' alleged illicit activities in those newsletters. (*Id.* ¶ 97.) Other incidents of alleged mail fraud include mailing false tax returns, perpetuating the RICO scheme through emails, and mailing membership solicitation materials that did not disclose the relationship between the Shriners and the Jesters. (*Id.* ¶¶ 99, 111.)

Regarding obstruction of justice, Plaintiff alleges that Defendants committed fraud on the court during the state court proceedings by seeking sanctions against Ellis's attorney and communicating ex parte with Judge Rosenbaum. (*Id.* ¶¶ 96, 107.) He further avers that Defendants illegally wiretapped and intimidated Plaintiff in his work as Ellis's paralegal. (*Id.* ¶ 107.) Relatedly, as to allegations of intimidation and retaliation, Plaintiff contends that Defendants employed individuals to intimidate, monitor, and wiretap him. (*Id.* ¶ 73.) Plaintiff claims he filed two police reports with the St. Paul Police Department documenting threats or intimidation. (*Id.* ¶ 105.)

(First R&R at 3-5.)

Following defendants' motion to dismiss, Blodgett twice moved to amend his complaint. Blodgett sought to add additional factual allegations and add Hanson's former attorney, Weimer, as a defendant. (*Id.* at 18.) One of the factual allegations is that Weimer has communicated with Ellis's former attorney, Mike Keogh, in an effort to make the Ellises "change their stories about why and when they distanced themselves from Plaintiff, and that it was not due to Jester retaliation." (Pl's Mem. in Supp. of First Mot. to Amend at 25, Aug. 6, 2012, Docket No. 16.) Another proposed additional allegation is that Blodgett has contacted potential witnesses who are "being recruited by Jon Hanson to join the Jesters" and "may be afraid of being prosecuted for mispris[i]on like [the defendant] out in Buffalo." (*Id.*)

The First R&R recommended granting defendants' motion to dismiss Blodgett's RICO and RICO conspiracy claims for several reasons, including a failure to sufficiently

plead a single predicate act, let alone a pattern of racketeering activity, and lack of standing. (*See* First R&R at 7-14.) It recommended denying Blodgett's motions to amend both because of numerous violations of the Local Rules and because the amendments would be futile. (*See id.* at 16-20.) Finally, the First R&R recommended either granting defendants' motion to dismiss Blodgett's state law claims or declining to exercise supplemental jurisdiction over the state law claims and dismissing them on that basis. (*See id.* at 14-16.)

After the First R&R was issued, The Trustees of Zuhrah Shrine filed a motion for sanctions, requesting that Blodgett be enjoined from pursuing similar litigation in the future and requesting that Blodgett pay their attorneys' fees incurred in bringing the motion. (Mot. for Sanctions, Sept. 28, 2012, Docket No. 32.) Blodgett did not file a brief in response to the motion, and he did not appear at the hearing. (Second R&R at 1.) The Magistrate Judge recommended granting the motion for sanctions, entering an injunction, and requiring Blodgett to pay $4,394 in attorneys' fees. (*Id.* at 10-11.)

## ANALYSIS

### I. STANDARD OF REVIEW

Upon the filing of a Report and Recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

Reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true and construes the pleadings in a light most favorable to the non-moving party. *See, e.g.*, *Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). To survive a motion to dismiss, however, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "Though pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citation omitted).

## II. BLODGETT'S OBJECTIONS TO THE FIRST R&R

### A. Violations of the Local Rules

As an initial matter, Blodgett's objections to the First R&R dramatically exceed the word limit set forth in the Local Rules. Blodgett has been advised by the Court on multiple occasions that he must comply with the Local Rules even though he is appearing *pro se*. (*See* First R&R at 19; Order at 2, Aug. 17, 2012, Docket No. 21.) At the conclusion of the First R&R, the Magistrate Judge included notice of the deadline for filing objections and the word limit of 3,500 for such objections. (*See* First R&R at 21 (citing D. Minn. LR 72.2(b)).) Yet, Blodgett certifies that his objections total 11,947 words, over three times the allowable length, and inexplicably states that "[h]opefully this

is not over the word count limit." (First Objections at 61.) The word limit is not a technical or complex rule, and the Magistrate Judge ensured that Blodgett was aware of it. Blodgett's substantial infractions of the Local Rules place unnecessary burdens on the Court and are sufficient grounds on which to overrule his objections. However, the Court will also consider the merits and will find that Blodgett's objections should be overruled for substantive reasons as well.

### B. The Substance of Blodgett's Objections

The first sixteen pages of Blodgett's objections are under the heading "Fundamental Objections and Request for Hearing." Pages 17-21 are titled "More Specific Objections to the [First R&R]." Pages 22-31 are Blodgett's "Brief Summary of Analysis and Argument." Pages 31-42 are entitled "As To Plaintiff's Verified Complaint and Verified Exhibits." Following a two-page, bold-face outline that rehashes the prior forty-plus pages, Blodgett spends pages 44-47 on "Specific Objections to [the First R&R] item by item," which are something of a summary of Blodgett's arguments. Blodgett's objections continue with six additional pages of discussion of the elements of his RICO claim. The Court has reviewed and considered the entirety of Blodgett's lengthy objections, but will focus on Blodgett's "Specific Objections to [the First R&R] item by item," which come closer than any other section of the objections to complying with the requirement that a party file "**specific** written objections" in order to trigger review by the District Court. Fed. R. Civ. P. 72(b)(2) (emphasis added); *accord* D. Minn. LR 72.2(b). The Court will address Blodgett's specific objections in turn.

Blodgett's first specific objection is that the First R&R incorrectly stated that Ellis was an attorney. (*See* First R&R at 2.) It does appear that Ellis proceeded *pro se* in his action before Judge Rosenbaum that began in 2010, and is not an attorney. This fact has absolutely no bearing on the present motion.

Blodgett's second specific objection is that the First R&R incorrectly stated that Judge Rosenbaum presided over all of Ellis's unsuccessful actions in state court, (*see id.*), when in fact she did not preside over the initial action that began in 2006 and ended in 2009. Like the factual discrepancy highlighted above, this detail is irrelevant.

Blodgett's third "specific" objection is that Judge Rosenbaum's res judicata ruling in 2010 was incorrect and "could only be explained to have resulted from illegal pressures exerted on Judge Rosenbaum by the Jesters or their lawyer Britton Weimer." This objection is nothing but speculation, fueled by the fact that Weimer sent an *ex parte* letter to the court during the prior proceeding. Judge Rosenbaum's res judicata decision was affirmed on appeal, *Ellis v. Hanson*, 2011 WL 5829104, and on the basis of Blodgett's pleadings, the Court finds it implausible that any defendant or Weimer's conduct constituted illegal conduct at all, let alone illegal conduct that qualifies as a RICO predicate act.[3]

Blodgett's fourth specific objection is that the First R&R did not sufficiently take account of the specific facts of the Jester guilty pleas in Buffalo, facts about other Jesters exposed by various investigative journalists, or Blodgett's allegations about Hanson's

---

[3] As the First R&R noted, obstruction of justice only qualifies as a predicate act under RICO if it relates to a federal court officer. (*See* First R&R at 7 (citing 18 U.S.C. § 1961(1)(B) (listing predicate acts) and 18 U.S.C. § 1503 (defining obstruction of justice).)

recruiting of Jesters.  This objection highlights a fundamental weakness in Blodgett's case.  As the Magistrate Judge explained, Blodgett "alleges that Justice Tills' guilty plea creates a reasonable inference that he attempted to procure prostitutes in Minnesota as well, which in turn, implicates Defendants by association." (First R&R at 3.) Blodgett's mere suspicion that the defendants in the present case engaged in human trafficking because other Jesters did, or must have known about the human trafficking and failed to report it, is not sufficient to survive a motion to dismiss.  The Magistrate Judge noted the details of Justice Tills' guilty plea, (*id.*), and explained that "[n]ot a single allegation ties Defendants to the incident in New York, and any such inference would be wholly unreasonable," (*id.* at 11).  Under these circumstances, the Court finds that the First R&R afforded appropriate weight to Blodgett's factual allegations and properly granted defendants' motion to dismiss Blodgett's RICO claims.

Blodgett's fifth specific objection is that his pleading regarding "exactly 'whom' caused the 'retaliation or witness tampering or money damages'" was sufficiently detailed given what information he could reasonably be expected to possess without discovery.  Relatedly, Blodgett objects that the First R&R did not recognize that he filed a police report describing the intimidation and retaliation he believed was aimed at him. Blodgett's police report, which the Court has reviewed, does provide some details of the alleged surveillance and intimidation.  (*See* First Objections at 83-84.)  The report includes the dates and locations of Blodgett's meetings with a Civil Society lawyer, Linda Miller, and an attorney who previously represented Ellis, Keogh, and also includes brief descriptions of the people allegedly conducting the surveillance.  However, the

details Blodgett provided to the St. Paul Police do not implicate defendants in the present case. Defendants in the present case are implicated only by conjecture and speculation. Thus, the Court finds that Blodgett's allegations regarding intimidation and retaliation, (notably, the only purported RICO predicate act that was targeted at Blodgett), are unsupported by facts implicating the defendants that might raise the allegations from merely "possible" to actually "plausible." *See Twombly*, 550 U.S. at 557.

Blodgett's sixth specific objection is that the First R&R did not take judicial notice of the certiorari petition from Ellis's action, which was denied,[4] or an ongoing declaratory judgment action filed by Hanson's insurers to determine whether they must defend Hanson in the present case.[5] The Court fails to see the relevance of Ellis's unsuccessful attempts to obtain further review of Judge Rosenbaum's res judicata rulings. Blodgett argues, in an inflammatory fashion, that the certiorari petition details how "Judge Rosenbaum has cemented her place in the State of Minnesota's judicial history by being the first judge in Minnesota to ever approve, despite actual notice, human trafficking by an attorney appearing in her courtroom." (First Objections at 50-51.) Blodgett continues his misguided line of argument by stating that the errors of Judge

---

[4] The Minnesota Supreme Court denied review on February 14, 2012, *see Ellis*, 2011 WL 5829104, and the United States Supreme Court denied the certiorari petition on October 1, 2012, *Ellis v. Hanson*, 133 S. Ct. 138 (2012).

[5] Pleading deadlines in the declaratory judgment action have been extended pending the outcome of defendants' motion to dismiss in the present action. The declaratory judgment action has no bearing on the merits of Blodgett's claims against Hanson or the other defendants. Blodgett seems to believe that the insurance company seeks a declaration that it owes no duty to defend or indemnify Hanson because Blodgett's claims have merit, but in fact the insurance company's duty to defend and indemnify Hanson turns not on the strength of the claims, but the nature of the claims and the terms of the policy.

Rosenbaum's res judicata decision "prompted the analysis in the Cert Petition," which "stands on its own and dismissal of any Cert. Petition is not a comment on the merits." (*Id.* at 51.) While difficult to follow, Blodgett appears to contend that Ellis's ongoing, unsuccessful efforts to obtain further review of Judge Rosenbaum's res judicata decision somehow prove that the decision was incorrect, which in turn somehow proves that Judge Rosenbaum was improperly influenced in reaching her decision, which is in turn proof of a RICO predicate act implicating defendants in the present case. The Court finds that each and every link of this chain of reasoning fails. Judge Rosenbaum's decision was affirmed on appeal and higher courts declined to offer further review. And even if Judge Rosenbaum's legal analysis had been incorrect, it would be pure conjecture to assume that the errors were caused by defendants' illegal influence over her.

Blodgett's seventh specific objection is that the First R&R incorrectly assumed that Blodgett's business relationship with the Ellises was limited to work relating to Ellis's case against Hanson, when in fact Blodgett "alleged and specified multiple ongoing separate business projects, involving Keogh, the Ellis[e]s and others." (First Objections at 46 (citing First R&R at 15).) This objection relates to Blodgett's state law claims for interference with a prospective contractual relationship and interference with an existing contract, which the Court will discuss below.

Blodgett's eighth specific objection is that the Magistrate Judge applied too steep a burden at the motion to dismiss stage, particularly because the complaint addresses

matters of public importance,[6] that Blodgett's allegations are plausible when given the benefit of reasonable inferences, and that Blodgett's proposed amendments to his complaint would not be futile. The Court finds that the First R&R applied proper standards for reviewing a motion to dismiss pursuant to Rule 12(b)(6). Blodgett's RICO claims are unsupported by facts implicating defendants, and Blodgett asks the Court to speculate and assume that defendants in the present case must be connected to events that led to guilty pleas in Buffalo simply because defendants in the present case are affiliated with the same organization. As Blodgett states in the complaint, "[i]t is not known at this time if Jon Hanson or local Court 53 Jesters or Tony Krall have trafficked in children; but other Jesters are facing civil penalties or prosecution for trafficking in children . . . . " (Compl. ¶ 12.) The prosecution of Jesters in Buffalo, without more, does not support a reasonable inference that defendants in the present case engaged in similar conduct or are aware of similar conduct in a manner triggering a duty to report it. As the Court has stated, Blodgett's unsupported allegations (including those in his proposed amendments to the complaint) are within the realm of possibility, but they are not sufficiently plausible to survive a motion to dismiss.

Having addressed each of Blodgett's specific objections, the Court notes that the remainder of Blodgett's objections consisted of sprawling arguments that were each

---

[6] Human trafficking is unquestionably a matter of public importance and the United States has successfully used the RICO statute to address human trafficking in recent years. *See United States v. Askarkhodjaev*, 444 Fed. App'x 105 (8th Cir. 2011); *see also* http://seattletimes.com/html/nationworld/2009673975_apushumantrafficking.html (last visited Feb. 21, 2013).

unavailing. For example, with respect to standing, Blodgett objects that the Magistrate Judge "abrogated Minnesota State law that defines legal rights to damages, as statutory or contractual property rights, virtually out of the picture, thus attempting to completely undermine Plaintiff's standing." (First Objections at 3.) He asserts that his "claims for RICO standing, as to damage to his business or property or profession are proper, when such damages are correctly analyzed under State statutory or contract law." (*Id.* at 35.) Blodgett's objection with respect to standing is fundamentally misguided because standing to bring a civil RICO claim is a matter of federal law that hinges on the interpretation of the federal RICO statute and the application of federal caselaw. *See Hamm v. Rhone-Poulenc Rorer Pharms, Inc.*, 187 F.3d 941, 951-54 (8th Cir. 1999). Whether Blodgett might have suffered damages that would be compensable under state tort or contract law does not answer the question whether Blodgett has suffered damages that give him standing to pursue a civil RICO claim.

For all of these reasons, the Court will overrule Blodgett's objections to the First R&R and adopt the Magistrate Judge's recommendation that the RICO claims be dismissed with prejudice.[7]

---

[7] The Court will also adopt the Magistrate Judge's recommendation that Blodgett's two motions to amend his complaint be denied. Blodgett's proposed amendments are futile with respect to his RICO claims. To the extent that the more detailed allegations might support Blodgett's state law claims, Blodgett can incorporate those allegations into a new pleading if he elects to pursue his state law claims in state court.

C. State Law Claims

The Court now must turn to the First R&R's treatment of Blodgett's state law claims. The First R&R provided alternative recommendations – it analyzed the merits of the claims and found that dismissal was warranted, but it also suggested that the state law claims could be dismissed without prejudice if the Court declined to exercise supplemental jurisdiction. For the reasons below, the Court will follow the second course and decline to exercise supplemental jurisdiction.

District courts have supplemental jurisdiction over certain state law claims that are related to claims over which the district court has original jurisdiction. *See* 28 U.S.C. § 1367(a). However, the decision to exercise supplemental jurisdiction is discretionary and the Court may decline to exercise jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). The Court considers principles of judicial economy, comity, fairness, and convenience in determining whether to exercise supplemental jurisdiction over remaining state law claims. *Farris v. Exotic Rubber & Plastics of Minn., Inc.*, 165 F. Supp. 2d 916, 919 (D. Minn. 2001) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Here, in addition to the case falling within the explicitly recognized exception in 28 U.S.C. § 1367(c)(3), the Court finds that declining to exercise supplemental jurisdiction is appropriate for several reasons. First, the Court has not invested substantial resources in analyzing Blodgett's state law claims, and the parties have not invested substantial resources in litigating them because the claims are in their early stages. *Cf. Willman v. Heartland Hosp. E.*, 34 F.3d 605, 613 (8th Cir. 1994) ("[W]e have

upheld the refusal to exercise jurisdiction over a state-law claim even though the federal claims were disposed of late in the proceedings and the court had already devoted significant judicial resources to the state claim."). Second, although the state law claims are related to the now-dismissed RICO claim because the conduct underlying the state law claims also purportedly amounted to a RICO predicate act, the scope of the case changes dramatically in the absence of the federal RICO claims. Blodgett may benefit from composing a new pleading that focuses on the factually narrower state claims in the absence of the sprawling claims relating to human trafficking for which Blodgett lacked support. Finally, it is apparent from Blodgett's objections that many factual allegations that are relevant to his state law claims were not included in the complaint. For example, Blodgett refers to defendants "us[ing] the mails or wires . . . to falsely inform . . . the Ellis[e]s that Plaintiff's paralegal work product or investigative work was no good, defective, or false." (First Objections at 35 n.30.) He also refers to having multiple business arrangements with Keogh and the Ellises. The complaint offered no such details. Because Blodgett's factual allegations are still disorganized and developing, they may be resolved more conveniently and fairly if Blodgett re-alleges his state claims in state court in a more focused pleading.

For these reasons, the Court declines to exercise supplemental jurisdiction over Blodgett's remaining state law claims and will dismiss those claims without prejudice. *See Franklin v. Zain*, 152 F.3d 783, 786 (8th Cir. 1998) (affirming a district court's decision not to exercise supplemental jurisdiction and modifying the district court's order to dismiss the remaining state claim without prejudice).

### III. BLODGETT'S OBJECTIONS TO THE SECOND R&R

The Second R&R relates to defendant Trustees of Zuhrah Shrine's Motion for Sanctions. (*See* Second R&R at 1.) The Second R&R recommends enjoining Blodgett from prosecuting any claims in the federal district courts of the Eighth Circuit arising from or related to the allegations made in the present action. (*See id.* at 10-11.) It also recommended that Blodgett be ordered to pay attorneys' fees of $4,394. (*Id.*)

Blodgett did not submit a brief in response to the motion and he also did not appear at the hearing before the Magistrate Judge. (*Id.*) Blodgett's explanation for neglecting to participate before the Magistrate Judge is that he "Merely Saw the Handwriting on the Wall and Saved His Objections, as the Magistrate Clearly Seems Not to Want to Allow Anyone Who Is Not a lawyer or federal law enforcement to hold the Defendants to Account." (Second Objections at 12.) Even though the Court would, in some circumstances, relax procedural rules because Blodgett is proceeding *pro se*, the Court finds that Blodgett's deliberate decision to ignore the proceedings before the Magistrate Judge amounts to a waiver of any objection to the Magistrate Judge's Second R&R. *See Ridenour v. Boehringer Ingelheim Pharms, Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012) ("[Plaintiff] was required to present all of his arguments to the magistrate judge, lest they be waived."). "[T]he purpose of referring cases to a magistrate for recommended disposition would be contravened if parties were allowed to present only selected issues to the magistrate, reserving their full panoply of contentions for the trial court." *Roberts v. Apfel*, 222 F.3d 466, 470 (8th Cir. 2000) (internal quotation marks

omitted). Blodgett is clearly aware of the possibility of waiving his arguments, as he asserts that the Court should not assume he has waived any objections. (Second Objections at 12.) Based on his unfounded belief that the Magistrate Judge is unwilling to consider his claims fairly, Blodgett intentionally decided to ignore the motion for sanctions and not take part in the proceedings before the Magistrate Judge. Under these circumstances, the Court finds that it is appropriate to deny Blodgett the opportunity to raise objections to the Second R&R.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Plaintiff's objections [Docket Nos. 41 and 49] and **ADOPTS** the Reports and Recommendations of the Magistrate Judge dated September 19, 2012 and October 30, 2012 [Docket Nos. 31 and 48]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Joint Motion to Dismiss [Docket No. 2] is **GRANTED** as follows:

    a. Blodgett's RICO claims (Counts I and II [Docket No. 1]) are **DISMISSED WITH PREJUDICE**.

    b. Blodgett's state law claims (Count III [Docket No. 1]) are **DISMISSED WITHOUT PREJUDICE**.

2. Blodgett's first Motion to Amend [Docket No. 15] is **DENIED**.

3. Blodgett's second Motion to Amend [Docket No. 26] is **DENIED**.

4. The Trustees of Zuhrah Shrine's Motion for Sanctions [Docket No. 32] is **GRANTED** as follows:

    a. Blodgett is enjoined from prosecuting any action or claim, in any United States District Court located within the Eighth Circuit Court of Appeals, arising from or related to the allegations made in this action, against Jon Hanson, Tony Krall, Court 53 Royal Order of Jesters, The Trustees of Zuhrah Shrine, the Zuhrah Shrine, all entities or individuals related to the Shriners or Jesters, including their divisions, officers, directors, members, attorneys, and representatives, absent prior written authorization from a judicial officer of the District of Minnesota, or unless the pleading is signed by an attorney duly admitted to practice in this District.

    b. Blodgett is ordered to pay attorneys' fees in the amount of $4,394.00 to The Trustees of Zuhrah Shrine.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 26, 2013                   \_\_\_\_s/ John R. Tunheim\_\_\_\_  
at Minneapolis, Minnesota.               JOHN R. TUNHEIM  
                                                         United States District Judge